STATE of Indiana, Appellant,

v.

Heath SPILLERS, Appellee–Defendant.

No. 48A02–0401–CR–76.

Court of Appeals of Indiana.

Oct. 13, 2004.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

SULLIVAN, Judge.

The State appeals the trial court's grant of a motion to suppress the evidence obtained as a result of the search of the apartment of Heath Spillers' girlfriend. The State presents one issue for our review, whether the warrant upon which the search was executed was based upon probable cause.

We reverse.

On February 5, 2003, Detective Jake Brooks of the Anderson Police Department was involved in the drug related arrest of Aaron Craib. From information gathered from Craib, Detective Brooks sought a warrant to search for drugs at the apartment in which Spillers had been staying with his girlfriend. After a hearing in which Detective Brooks relayed the information acquired from Craib about drug transactions occurring at the apartment and the presence of cocaine therein, Judge Fredrick Spencer issued the search warrant. Upon execution of the warrant, officers found between thirteen and fourteen grams of cocaine and a digital scale in a gym bag. Spillers admitted that the bag belonged to him. Consequently, he was arrested.

Spillers was subsequently charged with dealing in cocaine as a Class A felony. Prior to trial, Spillers filed a motion to suppress the evidence which was granted by Judge Thomas Newman, Jr., on August 25, 2003. The State sought permission to file a belated motion to certify the matter for an interlocutory appeal, which was granted by the trial court on September 30, 2003. However, it does not appear that the trial court ever certified the issue for interlocutory appeal.[1] Nonetheless, the State filed a motion requesting that this court accept its interlocutory appeal. This court denied that motion on December 15, 2003. As a result, the State filed a motion to nolle prosequi the charge because it could not proceed without the evidence. The trial court granted the motion. The State subsequently filed this

---

1. The order permitting the State to file the belated motion to certify did just that, it did not purport to certify the issue. The entries in the Chronological Case Summary also support the notion that the trial court never certi-fied the issue for interlocutory appeal. It appears that the confusion arises from the State's filing of the motion to file a belated motion and a motion for interlocutory appeal at the same time.

appeal. *See State v. Price,* 724 N.E.2d 670 (Ind.Ct.App.2000) (the appeal lies from the order of dismissal), *trans. denied.*

■■■ In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Allen v. State,* 798 N.E.2d 490, 495 (Ind.Ct.App.2003). The court reviewing the magistrate's decision is to focus upon whether a "substantial basis" existed for a warrant authorizing the search or seizure, and doubtful cases are to be resolved in favor of upholding the warrant. *Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997). It is clear that substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus upon whether reasonable inferences drawn from the totality of the evidence support the determination. *Id.* at 99. A reviewing court includes both the trial court ruling upon a motion to suppress and an appellate court reviewing a trial court's decision. *Id.* at 98. In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Allen,* 798 N.E.2d at 495.

The standard which we apply in reviewing the trial court's decision to grant a motion to suppress based upon the claim of an invalid search warrant is not well-settled. In *Houser,* our Supreme Court noted that de novo appellate review of a trial court's "substantial basis" determination had been followed by that Court without explicitly discussing the point. 678 N.E.2d at 98. The Court then stated that because "both the appellate and trial courts are reviewing the paper record submitted to the magistrate, there is no reason for appellate courts to defer to the trial court's

finding that a substantial basis existed for issuing the warrant." *Id.* The Court did not state that the same de novo standard should be applied when reviewing whether a trial court properly found that a substantial basis did not exist for issuing a warrant. On two separate occasions, the author of this opinion has questioned what the appropriate standard should be in a situation in which the trial court suppresses the evidence after finding that a substantial basis for issuing a warrant did not exist at the time the magistrate issued the warrant. *See Allen,* 798 N.E.2d at 503 (Sullivan, J., concurring); *Breitweiser v. State,* 704 N.E.2d 496, 502 (Ind.Ct.App. 1999) (Sullivan, J., concurring). We need not resolve that issue, however, because even if we were to give deference to the trial court's decision to grant the motion to suppress, that decision was not supported by the law or the facts.

■■■ Both the federal and state constitutions guarantee that a search warrant will not be issued without probable cause. *Leicht v. State,* 798 N.E.2d 204, 207 (Ind. Ct.App.2003), *trans. denied.* Probable cause is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime. *Id.* Probable cause to issue a search warrant cannot be provided by uncorroborated hearsay from an informant whose credibility is unknown. *Creekmore v. State,* 800 N.E.2d 230, 234 (Ind.Ct.App. 2003). Indiana Code § 35–33–5–2 (Burns Code Ed. Repl.1998) requires that when a warrant is sought based upon hearsay information, the affidavit must either:

"(1) Contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) Contain information that establishes that the totality of the circumstances corroborates the hearsay." [2]

In asserting to the trial court that the motion to suppress should have been granted, Spillers relied upon this court's decision in *Newby v. State*, 701 N.E.2d 593 (Ind.Ct.App.1998). In that case, this court was called upon to determine whether the hearsay statements made by an individual, Calloway, upon whom officers had discovered cocaine were credible so that Calloway's implication of Newby as his supplier established probable cause for issuance of a warrant. The court noted some of the various methods in which reliability of hearsay may be established, including: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predictable. *Id.* at 598. However, the court focused upon a separate factor which may establish the credibility of an informant, i.e. declarations against penal interest. *Id.* at 599. "A statement against penal interest must have 'so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Id.* (quoting *Jervis v. State*, 679 N.E.2d 875, 878 (Ind.1997)).

The *Newby* court determined that the statements made by Calloway, in which he implicated himself in criminal activity with Newby, could not be statements against penal interest for several reasons. *Id.* at 599. The first was that the issuing magistrate could not have reasonably inferred from the affidavit that Calloway had implicated himself in criminal activity. [3] *Id.* The second is that when Calloway made the statement, the police had already discovered drugs on Calloway and Calloway had consented to the search of his vehicle. *Id.* Thus, the "discovery of additional drugs was both imminent and inevitable." *Id.* Consequently, the statement was not against penal interest. *Id.* The court then noted that an officer had told Calloway that if he cooperated and named his source, "chances are that [he would not] be prosecuted." *Id.* at 600. Based upon this, the court concluded that the statements helped rather than hurt Calloway because they shifted the focus of criminal activity from Calloway to Newby.

The *Newby* court then went further and held that even if the statements would have been against penal interest, the hearsay was not reliable because the case was distinguishable from other Indiana cases in which such statements had been considered to establish informant credibility. *Id.* Specifically, it held that in those other cases, there was independent corroboration of facts relayed by the informant. *Id.* In *Newby*, the facts which were corroborated were facts which could have been

---

2. In the case before us, the request for a warrant was made in a hearing before Judge Spencer. Indiana Code § 35–33–5–8 (Burns Code Ed. Repl.1998) authorizes a judge to issue a warrant without the affidavit required under I.C. § 35–33–5–2 if the judge receives sworn testimony of the same facts as required in the affidavit. One manner in which the judge may receive the information is through a nonadversarial, recorded hearing. I.C. § 35–33–5–8(a)(1).

3. The statement in the affidavit to which the *Newby* court referred stated, "he believed the confidential informant to be a credible and reliable witness *because the informant had advised him where drugs were located, and that drugs had been located in that location.*" *Id.* at 598 (emphasis in original).

known to anyone within the public domain. *Id.* at 601. Thus, the corroboration could not be used to support Calloway's credibility. *Id.*

An arguably contrary result was reached by this court in *Leicht, supra.* In that case, a different panel of this court concluded that the statements made by the owner of a home in which drugs were found were reliable and rendered her a credible source so that probable cause existed to issue a search warrant for Leicht's residence. 798 N.E.2d at 208. The facts in that case reveal that two detectives of the Kokomo Police Department went to the residence of Bonnie Carpenter to investigate the possible drug involvement of her daughter. The detectives smelled the odor of burnt marijuana and requested to search the premises. Bonnie declined and the detectives returned with a warrant. Bonnie then directed Detective Brown to a sizable quantity of marijuana, over eight hundred dollars in cash, and drug paraphernalia. Bonnie told the detectives that she purchased the drugs from Leicht, starting with buying by the ounce to eventually selling for Leicht. She described the process by which she would acquire the drugs and acknowledged witnessing the delivery of crates containing bricks of marijuana.

The *Leicht* court concluded that the statements made by Bonnie were against her penal interest in that she implicated herself in the commission of dealing marijuana as well as conspiracy to deal marijuana. *Id.* The court then determined that Bonnie was a credible source. *Id.* Judge Baker, writing in dissent, disagreed with the conclusion that the statements were against penal interest. In his view, *Newby* compelled a different result. Similar to the conclusion reached in *Newby,*

Judge Baker opined that because Bonnie's statements were made after marijuana was found in her home, her decision to divulge her source did not subject her to enhanced criminal liability inasmuch as she was already under arrest for possession of marijuana. *Id.* at 210.

A result similar to that in *Leicht* was reached in *Creekmore, supra.* In *Creekmore,* the informant told a Morgan County Sheriff's Department Detective that the source of the marijuana and psilocybin mushrooms found in the informant's car was a dealer named "Dirty Dave." Based upon the information that the Detective learned from the informant and knowledge of other officers, he was able to acquire a search warrant. The subsequent search resulted in the finding of marijuana and psilocybin mushrooms. Creekmore sought to suppress the evidence, and this court held that the warrant was based upon probable cause. 800 N.E.2d at 235. That conclusion was reached because in reporting the source of the drugs in the informant's car, the informant implicated himself in the delivery of marijuana and psilocybin mushrooms. *Id.*

To the extent that the holdings in *Leicht* and *Creekmore* conflict with the holding in *Newby,* we decline to follow *Newby.* In the case before us, the evidence clearly reveals that Craib was found to be in possession of a small amount of cocaine. Craib informed police that over a period of several months, he had made over ten purchases of cocaine from Spillers. Thus, Craib implicated himself for more crimes than just the one upon which he was being arrested. Additionally, were Craib to have given false information in an effort to deflect attention from his own criminal acts, he could have been prosecuted for false informing.[4] Indeed, several courts have held that a criminal who was

---

4. Indiana Code § 35–44–2–2 (Burns Code Ed.     Supp.2004) makes it a crime to give a false

"caught red-handed" would not lightly undertake to divert the police's attention to other individuals knowing that false information could be used against him. *See, e.g., State v. Ward,* 231 Wis.2d 723, 604 N.W.2d 517, 524 (2000) (statement was reliable because informant, who had been arrested, made inculpatory statement under circumstances where, if his statements were found to be untrue, he would be in deeper trouble).

We also do not agree with the implication in *Newby* that separate facts relayed by the informant must be corroborated in addition to the statement being against the penal interest of the informant. *Houser, supra,* does not compel such a result. While it is true that the *Houser* Court concluded that it was important that the informant's statement was corroborated by the police, 678 N.E.2d at 100, there would never be any reason to review whether the statement is against an individual's penal interest if a secondary showing must be made that the information could be corroborated. This is so because corroboration of the informant's statement by itself is sufficient to find an informant to be credible. Thus, a statement which is against an individual's penal interest is sufficient to establish the declarant's credibility without a separate showing that the officers were able to corroborate the information before seeking a warrant.

Because the statements made by Craib were against his penal interest, the statements were reliable. Furthermore, given the information contained within the statements, a substantial basis existed upon which the judge who issued the warrant could conclude that probable cause existed.

The trial court's grant of the motion to suppress is reversed. The cause is remanded for further proceedings not inconsistent with this decision.

MAY, J., and VAIDIK, J., concur.

---

report of the commission of a crime or to give false information in the official investigation of the commission of the crime when the individual knows the report or information to be false.